## ROBBINS *et al.* v. WEISS.

Where a loan of money to defendant was secured by mortgage, and there were subsequent dealings on open account between defendant and the lender, and subsequently the book account was settled, in an action by the lender to foreclose the mortgage the fact that a portion of the book account was not collectible because it arose from illegal transactions on the board of trade was no defense after settlement of such account to the action to foreclose.

(Opinion filed April 7, 1903.)

Appeal from circuit court, Lake county. Hon. JOSEPH W. JONES, Judge.

Action by D. M. Robbins and another, copartners doing business as Robbins & Warner, against Charles H. Weiss. From a judgment for plaintiffs, defendant appeals. Affirmed.

*U. S. G. Cherry*, for appellant.

*Murray & Porter*, for respondents.

FULLER, J.  On the 15th day of September, 1899, appellant borrowed $4,000 of respondents, who are grain commission merchants, in the city of Minneapolis, and as partial security for the payment thereof, concurrently executed and delivered the real estate mortgage foreclosed in this action. Prior to the date above mentioned, he had become financially embarassed by losses sustained on the board of trade, and in order to be able to operate his elevator at the village of Wentworth, and continue as a grain dealer, he borrowed this money, with the understanding that all future shipments would be made to respondents.  According to the arrangement, an open account was kept between the parties, showing extensive shipments of grain from that date until about January 15, 1900, at

which time appellant owed respondents about $4,000 on open account, in addition to the $4,000 secured by mortgage. In connection with the buying and selling of grain, appellant was, and for some time prior to his acquaintance with respondents had been, engaged in the mercantile business, and always represented to them that his dealings were profitable and satisfactory in every way. Nevertheless his store was closed in the month of January. 1900, by virtue of a chattel mortgage; and, upon hearing of this fact, Mr. Warner visited Wentworth, and entered into a mutual arrangement with appellant. by which his firm accepted $2,000 in full settlement of the book account, amounting at that time to $3,987.34 exclusive of interest. Upon this occasion appellant admitted that he had resorted to deception concerning the amount of his indebtedness; that he had reason to believe that he could settle with all his creditors for about 40 cents on the dollar, if respondents would make the discount requested, and, if they did not do this, he declared that he was ruined, and that his assets were not sufficient to pay anything like 40 cents on the dollar. In addition to this compromise arrangement, and at the same time, appellant, with the knowledge, acquiescence, and assistance of respondents, sold the mortgaged elevator for about $4,600, and caused $3,200 of the proceeds to be indorsed upon his note secured by the mortgage in suit, which stood as security for the balance, including accrued interest.

Appellant's contention is that he has paid respondents all that was legally due them. and that they are now seeking to enforce the collection of a debt growing out of his unlawful speculation on the Minneapolis Board of Trade. Concerning the matter, Mr. Warner testified in part as follows: "Mr.

Weiss never did any option business or any speculating, so far as we know. In fact, it was against our principles, as we told Mr. Weiss at the time we commenced doing business with him, to lend anybody any money, or to do any grain business with any one who was inclined to speculate. We did cash business, exclusive." In opposition to this testimony a large number of letters and telegrams were introduced at the trial, showing a number of speculative transactions on the board of trade carried on by appellant through respondents, and it is quite probable that a portion of the indebtedness compromised by the payment of $2,000 was incurred by dealing in grain options. In support of his claim of settlement and satisfaction in full, appellant relies measurably upon the following instrument: "Madison, S. D., Jan. 16th, 1900. In consideration of $2,000 paid this day by C. H. Weiss of Wentworth, S. D., we the undersigned hereby release and discharge in full all book accounts and claims now outstanding against him. Robbins & Warner, by E. C. Warner." We find the evidence sufficient to show that the $2,000 was accepted at the earnest solicitation of appellant in settlement of the book account only, and that the $3,200 indorsement made upon the note secured by the real estate mortgage was strictly in accordance with the understanding and agreement of the parties. That appellant was fully conversant with the fact that something remained unpaid on his secured note after the book account was compromised, and the above-mentioned indorsement made, is conclusively shown by the following letter subsequently written: "Wentworth, S. D., Sept. 20, 1900. Messrs. Robbins & Warner—Gents: I have been figuring around how to raise money enough to pay your note, but it looks very much as if the wheat people were

the only ones that have any money, and they certainly have mine. In making my settlement last spring I have tied myself up, so it is no easy matter for me to get out, at all events I cannot make a raise at present. Among the several letters I received to my enquiries for money is one from a brother in-law of mine. He says if you can settle the note for half I will advance you the money. He says he would have to borrow it himself but he would only put it up as a settlement in full for the note. If you will accept such an offer let me hear from you. If you cannot accept the offer let me know what can be done. Yours truly, C. H, Weiss." Were we to assume upon the conflicting testimony that a portion of the book account paid in accordance with the compromise agreement was not collectible, on account of illegal transactions on the board of trade, that fact, after such compromise and payment, would not defeat the foreclosure of a mortgage given to secure a legitimate loan.

The evidence abundantly justifies the following findings of fact, of which counsel for appellant complains: "That the note has not been paid ,or any part thereof, except the interest thereon up to the 16th day of January, 1900, and the sum of $3,200 paid thereon the 16th day of January, 1900, and there is now due and unpaid on said note and mortgage the sum of $800, with interest thereon at seven per cent. per annum since the 16th day of January, 1900, and the plaintiffs are still the holders and owners of the said mortgage and note. That after the execution and delivery of the said note and mortgage the plaintiffs and defendant had other dealings between each other, and thereafter, on January 16, 1900, said plaintiffs and defendant had a full and complete settlement of all matters between

them, including the note and mortgage set out in the complaint; and it was then and there agreed that said balance of $800, and interest thereon, should be, and was, the amount due plaintiffs from defendant, and that said amount should remain secured by the said note and mortgage."

The record presents no question of law to be determined, and the judgment appealed from is affirmed.